does not appear to have been at all considered.

In this state of the adjudications here, I am disposed to follow the English court of admiralty, as authority on the question. It is important that such a question should be settled, and I am much impressed by the reasonableness of the rule as stated and commented upon by Dr. Lushington, in The Milan, 1 Lush. 388, which largely influenced the opinion of the district judge in the case of The Atlas, before referred to. If the rule in this country is to be settled contrary to the rule in England, it is fitting that it should be so declared by the court of last resort. It is not manifest that the owners of cargo, or of a tow, employing a vessel for carriage or towage, which is found guilty of fault producing a collision, ought, in equity, to stand in any better position, as against a colliding vessel, than the owners of the vessel conveying their cargo or towing their property. To require them to look solely to the vessel which they employ for their more complete indemnity, is recognizing their right to a full recovery, but entitling them to recover from each what each ought to contribute, while, as said by Dr. Lushington, it is not clear that justice requires that they be permitted to recover from one the whole amount of the damages occasioned by the act of both.

Let the decree be settled in conformity with these views.

[NOTE. From the final decree herein, appeals were taken by the Hartford & New York Steamboat Company, claimant of the steamboat, in both cases, and by Charles Robinson, the owner of the cargo, in the suit brought by him, and the decree was affirmed as to the finding of mutual fault by the steam vessels, and as to the award of damages and the division thereof, but as to the denial of the right of the libellant to recover more than a moiety against the steamboat, in the event of the inability of the tug to pay her share, the supreme court held, by Mr. Justice Clifford, that the libellant was entitled to be fully compensated for his loss, if the offending vessels were of sufficient value, and that, if the value of either vessel was insufficient to pay its share of the damages, then he might recover the deficiency from the other. The City of Hartford and The Unit, 97 U. S. 323.]

## Case No. 2,754.

### The CITY OF HOUSTON.

[Cited in The E. B. Ward, 16 Fed. 258. Nowhere reported; opinion not now accessible.]

## Case No. 2,755.

### The CITY OF HOUSTON.

[Cited in Acosta v. The Halcyon, Case No. 32. Nowhere reported. The records of the court having been destroyed by fire, the opinion cannot now be obtained.]

## Case No. 2,756.

### The CITY OF MEXICO.

[7 Ben. 31.] [1]

District Court, E. D. New York. Oct., 1873. [2]

SEAMEN—ARTICLES—REPEAL — SHIPPING COMMISSIONER'S ACT.

1. By the maritime law, as well as by the act of 20th July, 1790 (1 Stat. 131; Rev. St. § 4520), a written contract is required to be made on the shipment of seamen. That requirement of the act of 20th July, 1790, was not repealed by Act June 7, 1872 (17 Stat. 262).

2. In the year 1873, a steamship bound from New York to the West Indies and Mexico, caused a crew to be shipped for that voyage by written shipping articles executed on board the ship before a notary public, and not before a shipping commissioner. *Held*, that this was in violation of the 13th section of the act of June 7, 1872, and that the ship had incurred the penalty provided by the 14th section. See sections 4512, 4513, Rev. St.

In admiralty.

G. W. Hoxie, Asst. U. S. Dist. Atty., and Benedict, Taft & Benedict, for the United States.

Salter & Cowing and John A. Parsons, for claimants.

BENEDICT, District Judge. The present is a proceeding to condemn the steamship City of Mexico in a penalty for an alleged shipment of seamen, contrary to the provisions of the act of June 7, 1872 [17 Stat. 262], entitled "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen."

The facts are conceded to be, that the owners of the steamship City of Mexico caused a crew to be shipped on board that vessel, for a voyage from the port of New York to the West Indies and the republic of Mexico, by written shipping articles, executed by the crew on board their vessel, before a notary public, and not before the shipping commissioner. Such a shipment of a crew the government contends is in violation of the 13th section of the act referred to above, and renders the ship liable to a penalty of $200, as prescribed in the 14th section of that act.

The argument on the part of the vessel is, that the original act of 1790 [1 Stat. 131], which requires an agreement in writing or in print, in a certain form, with any mariner on any vessel bound from a port of the United States to any foreign port, is, as to vessels engaged in voyages like that of the City of Mexico, repealed by the passage of the ship-

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 14,797.]